*96 OPINION OF THE COURT
David Otis Fuller, Jr., J.
In this contract action, the plaintiff seeks reimbursement for losses she claims she incurred because of alleged mechanical failures of a Jeep sold to her by the defendant. A trial of the action was held without a jury on June 6, 1989.
On November 2, 1987, the plaintiff purchased a new 1988 Jeep Wrangler from the defendant, an auto dealer, for $13,058.63. With her purchase, she received a 1988 Jeep new vehicle limited warranty (12 months/12,000 miles base coverage) issued by the Jeep Corporation. The warranty expressly excluded coverage for loss of the use of the vehicle.
After the Jeep had been driven 6,502 miles, on March 21, 1988, the plaintiff had it towed to the defendant’s garage because the drive shaft had fallen off. When the defendant refused her request for the use of another vehicle while hers was being repaired, she purchased a secondhand station wagon elsewhere for $1,500 on April 2, 1988 which she needed especially to drive back and forth to a local college. The defendant, after replacing the rear axle assembly and the transmission at no charge, returned the Jeep to the plaintiff on April 20, 1988.
Eight days later, on April 28, 1988, the plaintiff brought the Jeep back to the dealer because of vibration at 40 and 60 miles per hour. She told the manager the next day that she wanted him to take the Jeep back, but he refused, stating that it was under warranty. The defendant returned the Jeep to her on May 3, 1988 and charged her $50.76 for balancing the wheels, something not covered by the warranty. She told another of defendant’s managers that she wanted him to give her another Jeep but he said that he could not do that because hers was under warranty.
The next day she brought the Jeep back to the defendant to check a vibration in the drive line, rear end pulling, and a rattle in the dash. The defendant installed a new drive shaft at no charge and returned the Jeep to the plaintiff on May 27, 1988.
Three days later, the car lost power and was brought back a fourth time for repair. The plaintiff asked a third manager to take the Jeep back, saying she did not want it anymore. He replied that he could not do that. The defendant repaired the Jeep at no charge and returned it to the plaintiff. She stopped using the Jeep.
*97 On July 29, 1988, the plaintiff sold the Jeep for $9,180. She seeks reimbursement for $2,885.86.
The defendant resists her claim because he states she has no cause of action under either the "Lemon Law” (General Business Law § 198-a) or the Uniform Commercial Code.
Defendant’s first defense requires little discussion. Section 198-a (c) (1) of the General Business Law limits the liability for any replacement or refund to the manufacturer. The plaintiff has not sued the manufacturer in this action and the defendant as dealer cannot be held liable under that law.*
Section 198-a (f), however, provides that "[n]othing in this section shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law.”
Section 2-608 of the Uniform Commercial Code provides as follows:
"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
"(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
"(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller’s assurances.
"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.”
Section 2-608 is constructed so that if a buyer notices a substantial nonconformity in the product before he accepts it, he may accept it with the expectation that the nonconformity *98 will be seasonably cured. If it is not, he may revoke his acceptance. If he does not notice any defect when he accepts it, he is charged with finding the nonconformity when he reasonably would be expected to and then revoking his acceptance if he wishes. In this case, the purchaser could not be expected to have known that the drive shaft of the Jeep would drop until it happened over four months after purchase. She revoked acceptance within a reasonable period thereafter, in the next month after discovering another problem. The dealer’s manager refused, reminding her that the Jeep was under warranty. In other words, he wanted the opportunity to correct the nonconformity.
The requirements, then, applicable here for revocation under section 2-608, are:
(1) the product is nonconforming in a way substantially impairing its value to the buyer; and
(2) the nonconformity is not seasonably cured; and
(3) the buyer revokes acceptance of the product within a reasonable time after discovery of the nonconformity.
The first requirement is easily met here. A vehicle with a fallen drive shaft which vibrates or which loses power is nonconforming and its value is substantially impaired to the purchaser as a consequence.
The second requirement is more troublesome. All the nonconformities were corrected. The circumstances of their being corrected, though, raise the question as to whether there actually was a seasonable cure.
From March 21 through May 30, a period of 71 days, the plaintiff had use of the vehicle for only 9 days. The other 62 days were taken up in the defendant’s garage. Moreover, a new vehicle driven less than 7,000 miles which had the serious problems in rapid succession that this vehicle had, problems which required such extensive time in the garage, could reasonably convince a purchaser that she had a vehicle that was not seasonably cured. She could have a reasonable expectation that another substantial problem could occur at any moment requiring towing, delay and a vehicle again out of service; in other words, no assurance of conformity. Based on the facts here, I find by a fair preponderance of credible evidence that a cure was not seasonably effected and that the plaintiff was entitled to revoke her acceptance.
The plaintiff orally revoked her acceptance to managers of *99 the defendant three times, the last time during the fourth repair engagement, but the revocation was rejected each time.
The defendant contends without citation that to effect revocation she was required to send a letter by certified mail to the dealer with her plates and title. Under the circumstances here, the revocation did not have to be in writing. The Jeep was in the defendant’s possession when clear revocation demands were made. In view of the refusal of the defendant to accept her oral revocations made in person to managers on three occasions, any more formality could have been considered futile. Accordingly, the plaintiff was entitled to revoke and did revoke her acceptance of the Jeep within a reasonable time.
Since the defendants refused to take back the Jeep, the plaintiff’s only alternatives were to keep it or dispose of it elsewhere. If she had simply kept it, such action might have been deemed a withdrawal of her revocation of acceptance unless she assiduously followed her obligations under Uniform Commercial Code § 2-608 (3) including avoiding any "exercise of ownership”. (UCC 2-602 [2] [a].) Instead, she sold it as an aggrieved seller. (UCC 2-711 [3]; 2-706.) Although there was no evidence that she notified the defendant that she intended to sell the Jeep, the defendant has not contested the sale price as unreasonable.
As to damages, the buyer may recover the purchase price under UCC 2-711 and incidental and consequential damages under UCC 2-715. The difference between the amount she paid for the Jeep and the amount she sold it for when the dealer refused to honor her revocation is $3,878.63. She is seeking $2,885.86. She testified that this amount consists of $1,500 to pay for the used station wagon as substitute transportation, two loan payments of $242.93 each on her Jeep for June and July of 1988 when she did not use the Jeep and $900 as the approximate difference between what she sold the Jeep for and the amount required to satisfy the balance of her loan.
She is entitled to the $2,885.86 because it is less than the difference between what she paid for the Jeep and what she sold it for, the measure under UCC 2-711. She is not entitled to that lesser amount, though, on the basis on which she has broken it down. For instance, she either still owns the station wagon or has received the proceeds from selling it and should not be reimbursed for it.
The claim for nonuse of the Jeep during the time it was *100 waiting to be sold (or during the repair period) fares no better. Even if the warranty were the dealer’s, it expressly disclaimed nonuse as compensable. To sustain that theory as collateral damages under UCC 2-715, she would have to demonstrate that she was damaged by the nonuse of the Jeep, something not shown by the evidence. In fact, her access to the station wagon during those periods is inconsistent with that theory.
Nor is the difference between the resale price and the loan payoff a measure of damages recognized by the Uniform Commercial Code. Any interest paid to the bank, moreover, had nothing to do with her purchase from the defendant. As stated by defense counsel at trial, the plaintiff should not be treated any differently whether she purchased the Jeep in cash or with financing.
She has demanded $2,885.86 as a pro se plaintiff. Recovery is not forfeited because she has expressed the amount of damages sought in a fashion that is not legally recognizable as long as it is valid under another theory. The defendant dealer should not suffer surprise because it is charged with knowledge of the measure of damages under a revocation of acceptance, a basic principle of the Uniform Commercial Code.
Judgment for the plaintiff in the sum demanded of $2,885.86.

 If section 198-a of the General Business Law were to apply, plaintiff would probably not be able to recover under section 198-a (d) (1) because, although the Jeep had been taken to the dealer’s garage for repairs four times, the repair attempts did not all relate to the same nonconformity, defect or condition. (See, Levinger v General Motors Corp., 122 AD2d 419, 421 [3d Dept 1986].) Under section 198-a (d) (2), however, relief is authorized if "the vehicle is out of service by reason of repair of one or more nonconformities, defects or conditions for a cumulative total of thirty or more calendar days during either period [two years or 18,000 miles], whichever is the earlier date.”