OPINION OF THE COURT
Ira J. Raab, J.
Defendant computer seller had sufficient unsuccessful "bytes at the apple” to repair a restaurant computer system, so as to *68 justify the buyer’s revocation of its acceptance of the failed computer system under UCC 2-608.
On February 1, 1995, plaintiff, The Inn Between, Inc., hereinafter Inn Between, of Syosset, New York, entered into a contract to purchase a used, refurbished and rebuilt restaurant computer system, including installation and training, from defendant Remanco Metropolitan, Inc., hereinafter Remanco, of North Caldwell, New Jersey. In addition, the parties entered into a maintenance contract, whereby Remanco agreed to keep the computer system in good operating order. The buyer relied upon the seller’s expertise to select a proper computer system for the use intended. The computer system was delivered and installed by Remanco on March 29, 1995. On March 30, 1995, the computer system malfunctioned and was down for three hours during a training session conducted by Remanco. Malfunctions with the computer system continued so that during the period from March 30, 1995 to July 3, 1995, Inn Between notified Remanco on 48 occasions that it was having problems with the computer system. Despite the fact that Remanco repeatedly responded to the problems with the computer system and repaired the computer system on numerous occasions, the computer system nevertheless constantly broke down.
Inn Between brought this action to revoke its acceptance of the computer system because the computer system failed to operate properly. After trial, the court determines that Remanco had numerous reasonable opportunities to repair the defects in the computer system, and that Remanco failed to timely and adequately do so. Had this system been an automobile, it surely could be termed a "lemon”.
The purchase agreement (at 2, § 17 [b]) and the hardware and softwear maintenance agreement (at 2, § 8 [g]) provide that New Jersey law shall govern. Although the agreements involved the sale of both goods (the computer system and related equipment) and services (installation and training), the agreements were predominantly for the sale and delivery of goods. Therefore, the parties’ rights and obligations are governed by article 2 of the Uniform Commercial Code. (Sears, Roebuck & Co. v Galloway, 195 AD2d 825 [3d Dept 1993]; Chatlos Sys. v National Cash Register Corp., 479 F Supp 738, 742 [D NJ 1979]; NJ Stat Annot § 12A:2-608.)
UCC 2-608 provides as follows:
"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
*69 "(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
"(b) without, discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller’s assurances.
"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.”
While the agreements require that the laws of New Jersey shall govern, the applicable laws of New York are the same as those of New Jersey.
In Maxwell v Crabtree Ford (144 Misc 2d 95 [Just Ct 1989]), the court ruled that the plaintiff may revoke the acceptance of the goods delivered even though the nonconformities in the goods were corrected. In Maxwell, the plaintiff bought a Jeep Wrangler that was defective. In reaching its decision, the court explained that the buyer may accept the nonconforming goods, with the expectation that the nonconformity will be seasonably cured and if not seasonably cured, the buyer may revoke his acceptance. (Supra, at 97-98.) In the present case, Inn Between found nonconformities in the computer system on March 30, 1995, the first day of training. Specifically, the computer system went down for three hours while Remanco worked on the system.
The next requirement of UCC 2-608, that the goods’ nonconformity substantially impairs their value to the buyer, is met in the present case. The nonconformities in the computer system were substantial because the computer system could not even be used for training for three hours. In addition, from March 29, 1995, the day Remanco installed the computer system, to July 10, 1995, the day Inn Between revoked its acceptance of the computer system, Inn Between called Remanco 48 times for service, and operations of Inn Between’s restaurant were severely hampered. Specifically, Inn Between’s work input on the computer system was lost when the system went down, further impairing the value of the computer system.
The next requirement is that the nonconformity was not seasonably cured. In Maxwell v Crabtree Ford (supra), the court reasoned that even though all the nonconformities in the Jeep *70 Wrangler were corrected, the nonconformities were not seasonably cured within the meaning of UCC 2-608 because the plaintiff was without the use of the Jeep Wrangler for 62 out of 71 days. In addition, the court noted that because the vehicle had been driven 7,000 miles and had serious problems in rapid succession, the plaintiff "could have a reasonable expectation that another substantial problem could occur at any moment requiring towing, delay and a vehicle again out of service; in other words, no assurance of conformity.” (Supra, at 98.) It should be noted that the present case is distinguished from Maxwell. Unlike the facts in Maxwell, Remanco did not finally cure the nonconformities in the computer system. Therefore, Inn Between satisfied the requirement that the nonconformities were not seasonably cured.
The last requirement of UCC 2-608 (2) is that the buyer revoke his acceptance "within a reasonable time after the buyer * * * discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.” The commentators note that "[s]ince this remedy will be generally resorted to only after attempts at adjustment have failed, the reasonable time period should extend in most cases beyond the time * * * for discovery of non-conformity after acceptance and beyond the time for rejection after tender.” (UCC 2-608, Comment 4.) Here, Inn Between revoked its acceptance on July 10, 1995, after providing Remanco 48 opportunities to finally adjust the numerous rapid succession nonconformities. The court finds that Inn Between revoked its acceptance within a reasonable time because Inn Between’s revocation was only seven days after the last call to Remanco stating that the system once again was down.
Remanco claims that for a breach of warranty, it need only repair or replace the system. The court holds that Remanco had more than enough opportunities to repair or replace the system. There are just so many "bytes at the apple” available to Remanco.
Remanco argues that Inn Between breached the hardware and software maintenance agreement by refusing to compensate Remanco for services rendered pursuant to the contract. The agreement states that Remanco’s obligation is "to keep the Remanco equipment in good operating condition.” The court concludes that as the Remanco equipment was not in good operating condition, Remanco did not perform its obligations under the agreement. Thus, Remanco cannot be paid for nonperformance. Therefore, Inn Between’s obligation to pay *71 for such maintenance services is excused because of Remanco’s nonperformance.
Judgment for the plaintiff in the sum of $8,405, which represents the stipulated purchase price of the computer system. The counterclaims for the unpaid maintenance contract price and for nonreturn of the computer system are dismissed. The payment of the judgment is conditioned upon the return of the computer system to the defendant. (Zinman v Hodgkiss, NYLJ, Nov. 24, 1992, at 37, col 3 [App Term, 2d Dept]; Joosten v Bruckner, NYLJ, May 10, 1993, at 31, col 4 [App Term, 2d Dept]; Johnson v Oliver, NYLJ, Apr. 8, 1996, at 33, col 4 [App Term, 2d Dept]; Rollup Shutters & Awnings v Bos, NYLJ, Apr. 5, 1996, at 33, col 2 [App Term, 2d Dept]; Rosenblatt v Kaiser, NYLJ, Nov. 29, 1994, at 34, col 4 [App Term, 2d Dept].)